## Snively *versus* The Commonwealth.

*Liability of Sheriff for Cash Proceeds of Sale on Partition, and for the Securities taken by him for the Purchase-money.*

1. Where a sheriff, under proceedings in partition, sold land for a sum in hand, taking judgment-notes for the balance of the purchase-money in his own name, which was afterwards lost, and suit brought against him therefor on his official recognisance, by the parties interested, it was *held*, that it should have been left to the jury as a question of fact, whether the money was lost by the negligence of the sheriff; and that it was error in the court to charge the jury that the plaintiff was entitled to a verdict.

2. The sheriff's return made him liable to pay the hand-money into court, or to the several parties interested so soon as their shares were ascertained, or to a call to bring the judgment-notes into court, that the parties might have them properly disposed of. The notes belonged to them, the decree of distribution fixed their several shares therein, and it was their business to see that they were collected.

ERROR to the Common Pleas of *Bedford county*.

This was an action of debt brought November 1st 1859, in the name of the Commonwealth for the use of James C. McLanahan and wife, John Bell and wife, L. W. Smith and wife, and A. L. Russell and wife, against Andrew J. Snively, on his official recognisance as sheriff of Bedford county.

The case was this: John King died in Bedford county, leaving ten children, of whom the plaintiffs, joined as above with their husbands, were four. He left real estate of considerable value, part of which he held in common with Dr. Swope.

Under proceedings in partition, an order for the sale of a portion of this real estate was directed to the defendant, who was then the sheriff of the county. In May 1850, he made sundry sales, which were all duly confirmed, the proceeds collected and paid over by him, except for a portion of the land sold by him to John King, one of the heirs of deceased.

The sale was made on three payments, viz., the hand-money payable November 30th 1850, the second instalment payable November 30th 1851, and the last on the 30th of November 1852. The hand-money was not paid by John King. For the other payments the sheriff took judgment-notes in his own name,

[Snively *v.* Commonwealth.]

which he entered up against him. The deed to King was acknowledged but not delivered.

On the 30th of November 1850, Snively petitioned the court for a distribution of the hand-money made on those sales; whereupon an auditor was appointed, who made a report, distributing not only the hand-money, but also the amount of the notes falling due November 30th 1851 and 1852, which report was confirmed February 11th 1851. On the 19th of November, Snively's term of office expired. On the 11th of March 1854, he took a judgment-note from John King, with security for the amount of the hand-money, also in his own name, which was duly entered. On the 28th of September 1855, he released the lien of the judgment which he had taken for the hand-money, as to certain lands which had been sold by defendant therein to E. Foster.

The judgments payable in 1851 and 1852 were not revived until after more judgments had been entered against John King than he could pay. But they were revived to March Term 1858, in the name of Snively, who still retained the bonds, as also the deeds which had been acknowledged to King. The proceeds of the sale of John King's property were sufficient to pay all the heirs in full except Mrs. McLanahan, but, inasmuch as in the settlement of other portions of the estate of the elder King, his son William R. King had been overpaid, he assigned to the other heirs his portion of the proceeds of the sale to his brother John. On the 14th of February 1859, Snively, without their knowledge or consent, assigned to the several heirs their respective shares of the judgment-notes taken by him from John, upon which executions were sued out, and his estate and effects exhausted. Upon distribution thereof the judgment for the hand-money was fully paid and satisfied, but those for the payments due in 1851 and 1852 were not reached.

This suit was then brought on the official recognisance of the defendant to recover the share of Mrs. McLanahan, as heir of John King, deceased, and the interest of all the plaintiffs by virtue of the transfer from William R. King above-mentioned.

On the trial the following points were presented by the counsel for the plaintiff and defendant, on which the instruction of the court below was requested:—

Plaintiffs' points.

1. That the money in the hands of the sheriff, arising out of the partition, having been decreed to the plaintiffs, the sheriff is bound to show affirmatively that he did pay the same according to the decree.

2. That, having entered up the securities which he held for the money in his own name, without any offer to assign them, and exercised the whole control over the same up to the time

[Snively v. Commonwealth.]

and until after the lien was lost, his assignment of the securities then is no payment under the decree of the court, unless he proves that it was done at the request of the plaintiffs and expressly agreed to be accepted by them in lieu of their claim and with the intention of releasing the sheriff from all responsibility.

3. That, although six years have elapsed since the plaintiffs had the right to demand this money from the sheriff, no presumption arises that the decree was complied with and the money paid, but the decree stands as a judgment of this court, from which the sheriff cannot be released except upon proof of absolute payment.

4. That the sheriff, by delivering his deeds to John and Thomas King, or their vendee, and thereby yielding an absolute security for the purchase-money, although the lien of judgments had expired, made himself responsible to the plaintiffs for the amount so lost by his breach of the trust reposed in him.

5. That the money and securities, which were decreed by the court to be paid to the heirs of John King, having come into the hands of A. J. Snively, sheriff, while acting as sheriff, his liability and duty in respect to their proper payment did not cease with the expiration of his term of office.

6. That the original liability of said A. J. Snively having accrued while in office, all subsequent acts, tending either to release or continue that liability, relate back to the original transaction; and, if he is clearly in fault, he is liable on his recognisance, as for breach of official duty.

Defendant's points:

1. If the jury believe that the defendant took from John King judgment notes for the purchase-money of the real estate, and entered them as liens upon the same, that under the Act of Assembly in relation to partitions, such notes so entered were a substitute for the money, and it was the business of said parties to see to their collection.

2. That all the evidence in this case does not show any such omission or violation of duty on the part of the then sheriff (now defendant) as will render him liable in this action on his recognisance as sheriff.

3. That, the auditor's report having been confirmed February 17th 1851, and this suit not having been brought within seven years from that date, there can be no recovery by plaintiffs.

4. That, if the jury believe that plaintiffs accepted the transfer by sheriff Snively entered on the notes, 14th February 1859, in payment of their several shares in the land sold, then they cannot recover in this action.

[Snively *v.* Commonwealth.]

5. That the fact that these plaintiffs accepted all those portions of the judgment given for hand-money, issued executions thereon, and received the money from the same, raises a fair presumption that they also accepted the transfer of the other judgment, such transfers having been made at the same time.

6. That the fact that these plaintiffs issued an execution on the transfers made to them on the 1st of April 1859, after the transaction of 14th February 1859, as proved by Mr. Russell, raises a strong presumption that they accepted such transfers in payment of their shares in the land sold.

7. That these plaintiffs, upon these very judgments, having aided in selling the real estate of John King, and having participated in the distribution of the proceeds arising therefrom, are estopped from calling upon this defendant for the balance not realized by said sales.

The court directed the jury to return a verdict for the plaintiffs.

There was a verdict and judgment accordingly, whereupon the defendant sued out this writ, and exhibited here the following specifications of error:—

1. The court erred in overruling the first point submitted by defendant.

2. The court erred in taking the case from the jury and directing a verdict for plaintiff.

3. The court erred in refusing to affirm the third, fourth, fifth, sixth, and seventh points of defendant.

*John Cessna,* for plaintiff in error.—The Act of 1799, § 2, authorizes the sheriff, on sales in partition, to receive the consideration-money or take sufficient security therefor to the satisfaction of the parties in interest. Sheriff Snively received bail for the hand-money, and took judgment-bonds from the purchaser for the two annual payments which were filed as liens against the lands sold. This was done in the fall of 1850. The last note was due 30th November 1852, and the auditor's report was confirmed February 17th 1851. No word of complaint from any quarter is heard until the 1st of November 1859, when these plaintiffs brought suit. Surely the jury had a right to suppose that those very plaintiffs, as "parties concerned," had been entirely satisfied with the nature and kind of security taken by the sheriff in lieu of the consideration-money. This view is strengthened by the other evidence in the case. In February, the judgments given for the payments of 1851 and 1852 were marked upon the record for the use of the plaintiffs in this action. They were, however, really the property of plaintiffs as soon as taken. The sheriff was a mere trustee, and although the notes

[Snively v. Commonwealth.]

were given to A. J. Snively, sheriff, his heirs or assigns, they belonged to the plaintiffs. After the 14th of February 1859, the plaintiffs issued executions upon these very judgments, and sold property of defendant John King. When the whole of the lands of John King had been sold, and the money made thereon had been brought into court for distribution, these very parties claimed and received a part of the money. The judgment for hand-money was satisfied by the sale, and the money appropriated thereto was raised from a sale of the very lands, for the proceeds. of which these parties are now pursuing the sheriff. The plaintiffs in this action were the sisters of John King, the purchaser. Sheriff Snively went out of office in November 1851. He had never delivered his deed to John King for the lands sold. The plaintiffs, however, saw fit to indulge their brother for a period of nearly ten years, and now seek to hold the sheriff responsible. It is admitted that the notes taken for the purchase-money were abundantly secure until they were permitted to lose their liens. This did not happen until 1856, nearly five years after Mr. Snively was out of office. If any liability was incurred by him it did not happen until this latter period; and, as this is an action upon his official recognisance, there can be no recovery. But under any view of the case which can be taken, the court was in error in taking the case from the jury. The questions of fact involved in the case were for the finding of the jury, and not for the decision of the court. The court not only decided all the law of the case, but also proceeded to find the facts and make the verdict for the jury. This was clearly error: McIldowney v. Williams, 4 Casey 492; Dougherty v. Stephenson, 8 Harris 210; Cole v. Bolard, 10 Id. 431.

*S. L. Russell* (with whom were *Forward & Gaither*), for defendants in error.—The second assignment of error alone requires the attention of this court; and, as it embraces the question whether any of the points submitted by the counsel of defendant below were sufficient, if answered properly, to compel the jury to release the sheriff from his liability by a verdict in his favour, we examine them in their order.

The first point claims, that, the sheriff having taken these notes and judgments as a substitute for the purchase-money, it was the business of the parties interested to see to their collection, and by inference, if they did not, and the claims were lost, it was their loss, not the sheriff's. These notes and judgments were payable to Andrew J. Snively, his heirs and assigns, a portion being for the first payment, which it was his business to have in cash, and pay over under the decree of distribution; for there was due to some of these plaintiffs a full share of the hand-money from John and Thomas King, which was not paid accord-

[Snively *v.* Commonwealth.]

ing to that decree, the sheriff having charge of the whole matter.

In February 1859, after the judgments were actually lost, he attempted to take an advantage, by assigning them over without the knowledge of parties to whom they were assigned, and binding them by a statement on record, that the assignment was made without recourse. If he desired or intended to do this, why was it not done years before? To do it then was an acknowledgment that he had not previously done his duty. It was his business then, if he wished to get rid of the responsibility of holding the securities payable to himself, to go to the parties, and, after paying over their share of the hand-money, which he should have had in his hands, assign them their several portions of the judgments to fall due. But having accepted the trust, as one of the duties belonging to his office, and holding the money and securities as such trustee, nothing short of a compliance with the decree of distribution will release his liability. This view of the case answers both first and second points.

As to the third point, that the auditor's report having been confirmed the 7th February 1851, and the suit not brought within seven years from that date, there can be no recovery. There is a limitation of five years to an action against the sureties in the official bond of a sheriff, but this is an action against the sheriff only on his recognisance. At the time this suit was brought there was no limit short at least of twenty-one years on the recognisance of a sheriff. The Act of 3d April 1860 limits the lien of the recognisance to ten years, but expressly provides that this expiration of lien shall not be construed to release the sheriff, his administrators or executors, from liability to answer any claims which may be established against him occasioned by official delinquency. A sheriff is not, therefore, entitled to plead the statute against the payment of funds in his hands, being an officer of the court and a trustee.

The fourth point, requiring the court to allow the jury to determine whether or not the plaintiffs accepted the transfer of the judgments on February 14th 1859, would only have been permitting them to determine a fact of the existence of which there was no evidence.

The evidence was that they were not present, and did not accept the assignment; that their counsel protested against it at the time, and the issuing of executions was explained by him so as to rebut the presumption arising from this act. Would it have been right and proper, then, to have permitted the jury to determine the case on such a presumption as required by defendant's fifth and sixth points?

The seventh point is, that plaintiffs, having aided, by means of these very judgments, to sell the real estate of John King,

[Snively v. Commonwealth.]

and having participated in the distribution of proceeds, are estopped from calling upon the sheriff for the balance not realized out of the sale.

The portion not realized is the very portion which has been lost by the default and neglect of the sheriff, and the fact that they were willing to receive that part which was saved for the sheriff, is no reason why they should lose their right of action against him. Whether the sheriff, on account of his retaining the deeds in his own hands, undelivered to the purchasers, has or has not a right still to hold the purchasers of King's defective title for the balance unpaid, is a question the result of which ought not to prejudice these plaintiffs. The sheriff took upon himself to act throughout the whole transaction, without agreement or consultation with these plaintiffs; and his liability being fixed, whether he is ultimately to lose the whole or save himself, is not to prejudice their rights.

The counsel for plaintiff in error argues another point, which, being made by plaintiffs below, was in effect affirmed by the court in ordering a verdict for plaintiffs. It was claimed by the plaintiff in error that, whereas the securities taken by the sheriff were good, and no money was actually lost to him or these parties until after the lien was suffered to expire, which was not until 1856, several years after the sheriff was out of office, there was not properly any breach of official duty, and therefore no action will lie upon his recognisance. It is true, no money could have been lost to the sheriff until after that time, but his failure to pay over the hand-money under the decree of court, or make any payment or arrangement in regard to the securities against King in his hands, all of which should have been done while he was still sheriff, shows his original liability to have accrued then. And all subsequent acts tending to release or fix that liability have reference to the original transaction, out of which arose his duty and responsibility to these plaintiffs, and which occurred while he was acting in his official capacity of sheriff of Bedford county.

There being no questions of fact upon which there was any room for a jury to differ, and the questions of law being well determined in the court below, the judgment should be affirmed.

The opinion of the court was delivered, July 24th 1861, by

LOWRIE, C. J.—This case was altogether too summarily dealt with by the instruction that the plaintiffs were entitled to the verdict. The law of the case is not so plainly against the defendant. It is not clear that the money claimed was lost by his fault. There was much irregularity in the proceedings in the particular case, and all the parties, as well as the sheriff, may be

4 WR.—6

[Snively *v.* Commonwealth.]

chargeable with it. His duty was not the same as when he has made a sale on a *venditioni exponas*, in which case nothing but payment of the amount of the sale will satisfy his duty; of course, for the hand-money, he was bound as soon as the sales were confirmed and completed: but this suit is not for that. In taking the judgment-notes for the deferred payments, the sheriff's name was used merely that there might be a formal contract for the money. In such judicial obligations, taken as part of the proceedings in a cause, it is not necessarily implied that the obligee is bound to see to their enforcement, for they are often taken in the name of the Commonwealth, and formerly very often in the name of the president judge, and they are really the property of the parties, or of some of them, and usually it is their business to attend to them.

The sheriff's return of sale renders him liable to a call to pay the hand-money into court at once, or to pay the several parties so soon as their shares were ascertained, and also to a call to bring the judgment-notes into court that the parties might have them properly disposed of. But he was not bound to seek the parties in order to make payment to them, or to assign to them their several shares of the notes. No assignment was needed, for, in law, the notes were theirs, and the decree of distribution fixed their several shares in them, and they ought to have seen to their collection. There was the question of fact, whether the money was lost by the negligence of the sheriff; that ought to have been left to the jury. If there are other questions needing instructions from us, we cannot give them for want of the declaration showing how the claim is presented, which has not been put upon our paper-books.

Judgment reversed, and a new trial awarded.